**IN THE  UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| DONALD A. MOORE, On Behalf of Himself and All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. |
| ELECTRONIC DATA SYSTEMS CORP., RONALD A. RITTENMEYER, JEFFREY M. HELLER, RAY L. HUNT, W. ROY DUNBAR, S. MALCOLM GILLIS, ELLEN M. HANCOCK, EDWARD A. KANGAS, JAMES K. SIMS, R. DAVID YOST, ERNESTO ZEDILLO and HEWLETT PACKARD COMPANY ) ) ) ) ) ) ) ) ) ) ) | **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |
| Defendants. ) ) | |

William B. Federman, TBA No. 00794935
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
Telephone:  (405) 235-1560
Facsimile:   (405) 239-2112
        --and--
2926 Maple Ave.
Suite 200
Dallas, Texas 75201
Attorneys for Plaintiff Donald A. Moore

Plaintiff, Donald A. Moore ("Moore" or the "Plaintiff"), by and through his attorneys, allege upon his personal knowledge as well as based upon the investigation conducted by his counsel, which included, *inter alia*, a review of public documents filed with the United States Securities Exchange Commission (the "SEC") and other published materials, as follows:

## NATURE OF THE ACTION

1.      This is a shareholder class action brought by Plaintiff on behalf of the holders of Electronic Data Systems Corp. ("EDS" or the "Company") common stock against EDS and certain of the Company's officers and/or directors and Hewlett –Packard Company ("HP") for injunctive and other appropriate relief arising out of Defendants' efforts to sell EDS to HP via an unfair process and at an unfair price of only $25 per share (the "Proposed Acquisition").  By approving and pursuing the unlawful Proposed Acquisition, each of the EDS Defendants violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, candor, independence, good faith and fair dealing to EDS' shareholders.  Defendant HP, in turn, is liable for aiding and abetting the EDS Defendants' breaches of fiduciary duties.

2.      Until recently, EDS was beset with shareholder litigation (securities fraud class actions, employee ERISA actions and shareholder derivative actions) as part of  Dick Brown's, former Chief Executive Officer of EDS, legacy.  EDS, in resolving these actions, took positive steps in improving its corporate governance that has begun to be reflected in improved business performance and shareholder value.

3.      Until August 2007, EDS stock traded substantially above the sale price Defendants agreed to in the Proposed Acquisition.  However, despite continued strong improvement in its financial performance, EDS stock, in line with the overall securities market, temporarily declined to as low as $15.90 per share before rebounding recently due to its continued strong performance,

which includes the recent signing of over ten (10) "megadeals," the most for EDS in any quarter since 2002.

4.      An opportunity for Defendants and other Company insiders to snatch lucrative benefits in a change of control transaction while allowing HP to acquire the Company for only 0.61 times estimated 2008 revenue and only 4.9 times estimated 2008 EBITDA was created by a temporary drop in the Company's share price.   At such a low price, given the sizeable merger synergies HP expects to realize, the Proposed Acquisition is estimated to be accretive to HP's fiscal 2009 earnings.  Thus, Defendants and HP stand to gain benefits for themselves, to the detriment of Plaintiff and the Company's other public shareholders.

5.      In pursuing this unlawful plan to divest the Company's public stockholders of their holdings in the Company at an unfair price and through the implementation of a flawed process, the Defendants have breached their fiduciary duties of loyalty, due care, independence, candor, good faith and fair dealing, and have aided and abetted such breaches by the Company's officers and directors.  Instead of attempting to negotiate a transaction reflecting the highest price reasonably available for the Company's shareholders, Defendants spent considerable effort tailoring the Proposed Acquisition for their benefit and the benefit of HP.

6.      Because Defendants dominate and control the business and corporate affairs of EDS and are in possession of private corporate information concerning the Company's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of EDS, which makes it inherently unfair for them to execute and pursue any proposed merger agreement under which they will reap disproportionate benefits to the exclusion of maximizing stockholder value.

7.      In short, the Proposed Acquisition is designed to unlawfully divest the Company's public stockholders of the valuable assets of the Company for grossly inadequate consideration. Further, the Defendants have failed to disclose all material information regarding the Company and its true value.

8.      Plaintiff seeks to enjoin the Proposed Acquisition.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because complete diversity exists between Plaintiff and each Defendant, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: i) EDS maintains its principal place of business in this District; ii) one or more of the Defendants either resides in or maintains executive offices in this District; iii) a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and engaging in a conspiracy in violation of their fiduciary duties owed to EDS; and iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

# PARTIES

## Plaintiff

12.     Plaintiff, Moore, a citizen Virginia, owns common stock of EDS and has owned such shares continuously since the wrongs complained of herein.

## Defendant EDS

13.     Defendant EDS is a corporation organized and existing under the laws of the state of Delaware, with its headquarters located at 5400 Legacy Drive, Plano, Texas 75024.

14.     EDS describes itself as a leading global technology services company that delivers business solutions.  It is ranked second in gross revenues among information technology service companies.  EDS established the information technology outsourcing industry more than 45 years ago.  Today, EDS, as a top Fortune 500 company, delivers a broad portfolio of information technology and business process outsourcing to clients in manufacturing, financial services, healthcare, communications, energy, transportation and consumer and retail industries and to governments around the world.    As of January 31, 2008, EDS and its subsidiaries employed approximately 139,500 persons in the United States and 65 other countries around the world.

## Individual Defendants

15.     Defendant Ronald A. Rittenmeyer ("Rittenmeyer") has served as the Company's Chairman of the Board and Chief Executive Officer ("CEO") since September 2007.  Rittenmeyer has served as President of EDS since December 2006.   He served as Chief Operating Officer of EDS from October 2005 to September 2007 (including service as Co-Chief Operating Officer until May 2006) and as Executive Vice President, Global Service Delivery from July 2005 to December 2006.  Rittenmeyer's son has been employed by EDS since 2001.  Rittenmeyer stands to receive in excess of $30 million in change of control benefits if the Proposed Acquisition is consummated. Rittenmeyer is a citizen of Texas.

16.     Defendant Jeffrey M. Heller ("Heller") has served  as Vice Chairman of EDS since December 2006 and as a Director since rejoining EDS in 2003. He was President of EDS from March 2003 to December 2006 and Chief Operating Officer from March 2003 to October 2005. Heller retired from EDS in February 2002 as Vice Chairman, a position he had held since November 2000.  He served as President and Chief Operating Officer of EDS from 1996 to 2000 and Senior Vice President from 1984 to 1996.  Heller joined EDS in 1968 and has served in numerous technical and management capacities.  Heller stands to receive in excess of $14 million in change of control benefits if the Proposed Acquisition is consummated.  Heller is a citizen of Texas.

17.     Defendant Ray L. Hunt ("Hunt") is currently a director of EDS and has served as a Director since 1996.  Hunt is a citizen of Texas.

18.     Defendant W. Roy Dunbar ("Dunbar") is currently a director of EDS and has served as a Director since 2004.   Dunbar is a citizen of Texas.

19.     Defendant S. Malcolm Gillis ("Gillis") is currently a Director of EDS and has served as a Director since 2005.  Gillis is a citizen of Texas.

20.     Defendant Ellen M. Hancock ("Hancock") is currently a Director of EDS and has served as a Director since 2004.  Hancock is a citizen of Connecticut.

21.     Defendant Edward A. Kangas ("Kangas") is currently a Director of EDS and has served as a Director since 2004.  Kangas is a citizen of New Jersey.

22.     Defendant James K. Sims ("Sims") is currently a director of EDS and has served as a Director since 2006.  Sims is a citizen of Massachusetts.

23.     Defendant R. David Yost ("Yost") is currently a director of EDS and has served as a Director since 2005.   Yost is a citizen of Pennsylvania.

24.     Defendant Ernesto Zedillo ("Zedillo") is currently a director of EDS and has served as a Director since 2007.  Zedillo is a citizen of Pennsylvania.

25.     Defendants Rittenmeyer, Heller, Hunt, Hancock, Kangas, Dunbar, Gillis, Yost, Sims and Zedillo are referred to herein as the "Individual Defendants."

**Defendant HP**

26.     Defendant HP is a Delaware Corporation headquartered at 3000 Hanover Street, Palo Alto, California 94304.

27.     HP was recently touted as the largest technology company with over $104 billion in sales last year.  Its growth has been fueled in great part, through acquisitions of complimentary tech companies including the $24 billion acquisition of Compaq.  HP's acquisition of EDS would allow HP to radically expand sales to big corporations estimated to be "somewhere north of $1.2 trillion."  HP currently markets personal computers, notebook computers, servers, network management software, printers, digital camera, calculators and other technology products.  The best and fastest way for HP to expand the enterprise-technology side of its business, servers, hardware, software and services is the acquisition of EDS.

### DEFENDANTS' FIDUCIARY OBLIGATIONS

1.     In any situation where the directors of a publicly traded corporation undertake a transaction that will result in either: i) a change in corporate control; or ii) a break-up of the corporation's assets, the directors have an affirmative fiduciary obligation to obtain the highest value reasonably available for the corporation's shareholders, and if such transaction will result in a change of corporate control, the shareholders are entitled to receive a significant premium.  To diligently comply with these duties, the directors may not take any action that:

     i.     adversely affects the value provided to the corporation's shareholders;

ii.     will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

iii.    contractually prohibits them from complying with their fiduciary duties;

iv.    will otherwise adversely affect their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

v.     will provide the directors with preferential treatment at the expense of, or separate from, the public shareholders.

2.     In accordance with their duties of loyalty and good faith, the Defendants, as directors and/or officers of EDS, are obligated to refrain from:

i.     participating in any transaction where the directors' or officers' loyalties are divided;

ii.     participating in any transaction where the directors or officers receive or are entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

iii.    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

3.     Plaintiff alleges   that the Individual Defendants, separately and together, in connection with the Proposed Acquisition, violated the fiduciary duties owed to Plaintiff and the other public shareholders of EDS, including their duties of loyalty, good faith, candor, due care and independence, insofar as they stood on both sides of the transaction and engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the Class (as defined below).  As a result of the Individual Defendants' self-dealing

- 7 -

and divided loyalties, neither Plaintiff nor the Class will receive adequate or fair value for their EDS common stock in the Proposed Acquisition.

4.      The Individual Defendants owe fiduciary duties to EDS and its shareholders and were and are required to act in furtherance of the best interests of EDS' shareholders, to maximize shareholder value in the sale of the Company, and to refrain from abusing their positions of control.

## CLASS ACTION ALLEGATIONS

5.      Plaintiff brings this action on his own behalf and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a class comprised of all shareholders of EDS (except Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants) or their successors in interest, who have been or will be adversely affected by the conduct of the Defendants alleged herein (the "Class") and all other persons similarly situated.

6.      This action is properly maintainable as a class action.

7.      The Class is so numerous that joinder of all Class members is impracticable. According to the Company's Securities and Exchange Commission filings, there were 502 million shares of EDS common stock outstanding as of April 25, 2008, owned by thousands of shareholders of record throughout the United States.

8.      There are questions of law and fact which are common to members of the Class and which predominate over questions affecting any individual members.  The common questions include, *inter alia*, the following:

(a)      whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b)      whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

- 8 -

(c)      whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(d)      whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of EDS;

(e)      whether the Individual Defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, honesty and fair dealing;

(f)      whether the Individual Defendants have breached their fiduciary duties of candor to Plaintiff and the other members of the Class in connection with the Proposed Acquisition by soliciting shareholder votes in favor of the Proposed Acquisition based upon inadequate disclosures;

(g)      whether the Proposed Acquisition compensation payable to Plaintiff and the Class is unfair and inadequate;

(h)      whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets;

(i)      whether defendant HP has induced or aided and abetted breaches of fiduciary duty by members of EDS' Board of Directors; and

(j)      whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

9.      Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation in this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interest as the other members of the Class.

Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

10.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

11.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.

12.     For the reasons stated herein, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

13.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Background of EDS

14.     On June 27, 1962, Ross Perot founded EDS which ultimately grew from a handful of people to over a thousand employees and contractors as their client base expanded and revenues climbed to more than $16 million with world-wide operations.

15.     During the 1970s, EDS expanded into new global markets.  During this time, Company revenues grew from more than $47 million in 1970 to $274 million in 1979.  The number of employees grew from more than 2,000 to more than 10,000 during this time frame.

16.     EDS expanded its collaboration with new partners when General Motors acquired the Company in 1984.  The Company's revenues grew from almost $375 million to more than $5

billion.  EDS remained a wholly owned subsidiary of GM until its split-off in 1996.  As a result of the split-off, EDS became an independent, publicly held Delaware corporation.

17.     EDS began the 1990s with 61,000 employees and grew to about 120,000.  Revenue tripled during the 1990s, reaching $18.5 billion in 1999.  In 1999, EDS was ranked first in *Fortune* magazine's 1999 Global 500 "Computer Service and Software" category.  EDS celebrated its 40-year anniversary in 2002, the industry it created contributed more than $500 billion to the global economy.

18.     Until August 2007, EDS shares traded substantially above the sale price Defendants agreed to in the Proposed Acquisition.  However, the price of EDS stock temporarily declined to a low of $15.90 per share in March 2008.  This decline occurred despite the strong financial performance by the Company.  For example, in an August 2007 press release entitled "EDS Reports 2007 Second Quarter Results," the Company announced quarterly "adjusted EPS of 27 cents, up 35% versus a year ago" and quarterly "revenue of $5.45 billion, up 5% versus a year ago." The press release stated in relevant part:

> PLANO, Texas - EDS today reported second quarter 2007 adjusted net income of $143 million, or 27 cents per diluted share, versus second quarter 2006 adjusted net income of $107 million, or 20 cents per diluted share.  See "GAAP Reconciliation" below for reported net income and earnings per share for second quarter 2007 and 2006.
>
> Second quarter revenue increased 5 percent to $5.45 billion from $5.19 billion in the year-ago quarter[1].  Second quarter revenue increased 1 percent on an organic basis, which excludes the impact of currency fluctuations, acquisitions and divestitures.
>
> "EDS continued to make significant operational progress in the second quarter," said Mike Jordan, chairman and chief executive officer. "Earnings and revenues were solid and keep us on pace to achieve our full-year guidance.  We improved our competitiveness by building on our capabilities in applications services, deploying our Global Services Network and continuing to drive leverage, standardization and quality in our global delivery system."

Jordan indicated that, as a result of the capital requirements of new business transitions and intensified investment in upgrading and automating facilities, EDS' full-year 2007 free cash flow will now most likely be in the range of $900 million to $1 billion.

EDS signed $4.3 billion in contracts in the second quarter of 2007 versus $5.4 billion in the year-ago quarter. EDS signed six deals in the second quarter of 2007 with contract values greater than $100 million with clients in the communications, government, financial services and consumer goods industries - including an eight-year, approximately $1 billion applications and IT services contract with Germany-based KarstadtQuelle AG, Europe's leading retail and tourism group.

"EDS is increasingly well positioned in the marketplace. Our sales pipeline is strong, especially in applications services, a priority growth area for the company, and we are winning an increasing percentage of new logos," said President and Chief Operating Officer Ron Rittenmeyer, who will become president and chief executive officer, effective September 1.

"At the same time, we are intensifying our current change management programs to further build out our applications business and capabilities, while achieving incremental, productivity-related savings," said Rittenmeyer.

19.     Similarly, in a November 2007 press release entitled "EDS Reports 2007 Third Quarter Results," EDS reported quarterly "adjusted EPS of 42 cents, up 75% versus a year ago," quarterly "revenue of $5.63 billion, up 6% versus a year ago" and quarterly "contract signings of $5.7 billion, up 61% versus a year ago."

20.     Recently, in a February 6, 2008 press release entitled "EDS Reports Fourth Quarter and Full-Year 2007 Results," EDS announced its financial results for the fourth quarter. The press release stated in relevant part:

### EDS Reports Fourth Quarter and Full-Year 2007 Results

- Fourth quarter adjusted EPS of 55 cents, up 17% versus a year ago; fourth quarter 2007 GAAP EPS of 36 cents

- Full-year 2007 adjusted EPS of $1.56, up 58% versus 2006; 2007 GAAP EPS of $1.35

- Fourth quarter revenues of $5.83 billion, up 2% versus a year ago

- Full-year 2007 revenue of $22.1 billion versus $21.3 billion for 2006

- Fourth quarter free cash flow of $563 million, up 44 percent versus a year ago

PLANO, Texas - EDS today reported fourth quarter 2007 adjusted net income of $295 million, or 55 cents per share, versus fourth quarter 2006 adjusted net income of $254 million, or 47 cents per share. Fourth quarter 2007 net income, in accordance with U.S. GAAP, was $189 million, or 36 cents per share, versus $217 million, or 40 cents per share, in the prior year's fourth quarter.

Fourth quarter revenue increased 2 percent to $5.83 billion from $5.70 billion in the year-ago quarter. Fourth quarter revenue decreased 3 percent on an organic basis, which excludes the impact of currency fluctuations, acquisitions and divestitures.

"EDS posted a solid fourth quarter to end a year of operational progress in 2007," said Ron Rittenmeyer, EDS chairman, president and CEO. "We continued to improve our competitiveness and made progress toward our financial goals."

EDS signed $6.1 billion in contracts in the fourth quarter 2007, versus $7.6 billion in the year-ago quarter. Fourth quarter 2007 signings included seven contracts with values greater than $100 million.

Second-half 2007 total contract value was $11.8 billion, representing EDS' best second-half signings' performance since 2001, and the overall 2008 sales pipeline is up 10 percent versus the year-ago period, showing strength in both IT outsourcing and applications.

"We are pleased with recent booking trends," Rittenmeyer said. He noted that a number of large contracts for which EDS was down-selected to one moved from the fourth quarter of 2007 into 2008.

Significant fourth quarter signings included a new contract to deliver infrastructure services to Bristol-Myers Squibb; a Medicaid contract extension with the State of Indiana leveraging EDS' leading-edge inter Change Health System; and an IT services contract with Continental Airlines.

EDS continued its focus on the sale of applications services in the fourth quarter, signing $1.8 billion in contracts representing 30 percent of total contract value for the quarter. For the full year, applications services represented 32 percent of total contracts sold.

The company continued to build its presence in applications services with the fourth quarter launch of EDS' Global SAP Consulting Practice and the launch of a Global Testing Practice. In addition, EDS enhanced its applications business with the acquisition of a majority interest in Saber Solutions, a leading provider of software and solutions to U.S. state and local governments.

Fourth quarter 2007 operating margin was 7.3 percent on an adjusted basis versus 6.8 percent in the year-ago quarter.

Free cash flow was $563 million in the fourth quarter of 2007, up 44 percent from the year-ago period.

\*       \*       \*

**Full-Year 2007 Results**

EDS' 2007 adjusted net income was $828 million, or $1.56 per share, compared to adjusted net income of $522 million, or $0.99 per share in 2006. Full-year 2007 net income, in accordance with U.S. GAAP, was $716 million, or $1.35 per share, versus net income of $470 million, or $0.89 per share, in 2006.

Full-year 2007 adjusted net income and EPS exclude costs related to the company's fourth quarter 2007 early retirement offer of $154 million, or $0.18 per share, net after-tax losses associated with discontinued operations of $13 million and pre-tax items as follows: a write-off of acquired in-process research and development of $6 million and a reversal of previously recognized restructuring expenses of $4 million. Full-year 2006 adjusted net income excluded net after-tax losses associated with discontinued operations of $29 million, a pre-tax loss on divestitures of $22 million, and a reversal of previously recognized restructuring expenses of $7 million.

Full-year 2007 total revenue increased 4 percent to $22.1 billion from total revenue of $21.3 billion in 2006.

Full-year 2007 total contract value was $19.5 billion, down 26 percent from $26.5 billion the prior year. Excluding the multibillion dollar contract renewals with General Motors and the U.S. Navy in 2006, total contract value increased 2 percent year-over-year. In 2007, EDS signed 28 mega-deals with total contract values greater than $100 million versus 26 mega-deals in 2006. New logos accounted for $3.5 billion of total contract value in 2007.

Full-year 2007 free cash flow increased to $892 million, from $887 million for full-year 2006.

"EDS enters 2008 a stronger and more competitive company," said Rittenmeyer. "Our financial priorities include driving sustainable operating margin and free cash flow improvement, building on our strong presence in ITO, continuing to enhance our capabilities in higher-margin applications services, and expanding and improving our Best Shore® global delivery. At the same time, we will always maintain our relentless focus on operational excellence, quality and our 'zero outage' goal for clients."

21.     On April 24, 2008, in a press release entitled "EDS Reports First Quarter 2008 Results" the Company announced its financial results for the first quarter of 2008.  The press release stated in relevant part:

### EDS Reports First Quarter 2008 Results

- First quarter EPS of 12 cents, revenues of $5.37 billion ... exceeded guidance
- First quarter signings of $5.6 billion, up 66% versus a year ago
- 12 megadeals ... most in any quarter since 2002

PLANO, Texas - EDS today reported first quarter 2008 adjusted net income of $63 million, or 12 cents per share, versus first quarter 2007 adjusted net income of $165 million, or 31 cents per share. First quarter 2008 net income, in accordance with U.S. GAAP, was $62 million, or 12 cents per share, versus $164 million, or 31 cents per share, in the prior year's first quarter.

22.     EDS stock rebounded in recent weeks before prior to being capped by the announcement of the Proposed Acquisition as a result of its continued strong performance. Furthermore, HP's grossly inadequate offer has not taken into account the increased value of EDS' strong corporate governance practices, which will ultimately allow EDS to produce significant higher annualize returns.

**The Proposed Acquisition**

23.     The acquisition of EDS by HP represents the biggest deal acquisition for HP since 2002.  The merger is intended to create a computer services giant intended to rival IBM in the market for serving business customers.  HP prizes EDS because it wants to become a much bigger player in technology services – a wide- ranging category that includes running computer data centers, stitching together software programs and consulting on special projects for business and government clients.

24.     On May 13, 2008, EDS and HP issued a press release announcing that EDS had entered into an Agreement and Plan of Merger (the "Merger Agreement") with HP and the terms have been unanimously approved by the HP and EDS boards of directors.  Under the terms of the Merger Agreement, shareholders of EDS will receive $25.00 in cash for each share of EDS stock owned.   Specifically, the press release stated in relevant part:

## HP to Acquire EDS for $13.9 Billion

- EDS shareholders to receive $25.00 per share in cash for each EDS share

- Transaction expected to more than double HP's revenue from services, furthering its standing as world's largest technology company

PALO ALTO, Calif., and PLANO, Texas, May 13, 2008 –HP and EDS today announced that they have signed a definitive agreement under which HP will purchase EDS at a price of $25.00 per share, or an enterprise value of approximately $13.9 billion. The terms of the transaction have been unanimously approved by the HP and EDS boards of directors.

The transaction is expected to close in the second half of calendar year 2008 and to more than double HP's services revenue, which amounted to $16.6 billion in fiscal 2007. The companies' collective services businesses, as of the end of each company's 2007 fiscal year, had annual revenues of more than $38 billion and 210,000 employees, doing business in more than 80 countries.

HP intends to establish a new business group, to be branded *EDS –an HP company*, which will be headquartered at EDS's existing executive offices in Plano, Texas. HP plans that EDS will continue to be led after the deal closes by EDS Chairman, President and Chief Executive Officer Ronald A. Rittenmeyer, who will join HP's executive council and report to Mark Hurd, HP's chairman and chief executive officer.

HP anticipates that the transaction will be accretive to fiscal 2009 non-GAAP earnings and accretive to 2010 GAAP earnings. ***Significant synergies are expected as a result of the combination.***

"The combination of HP and EDS will create a leading force in global IT services," said Hurd. "Together, we will be a stronger business partner, delivering customers the broadest, most competitive portfolio of products and services in the industry. This reinforces our commitment to help customers manage and transform their technology to achieve better results."

Rittenmeyer said, ***"First and foremost, this is a great transaction for our stockholders, providing tremendous value in the form of a significant premium to our current stock price. It's also beneficial to our customers, as the combination of our two global companies and the collective skills of our employees will drive innovation and enhance value for them in a wide range of industries. In addition, our Agility Alliance will be significantly strengthened."***

Acquiring EDS advances HP's stated objective of strengthening its services business. The specific service offerings delivered by the combined companies are: IT outsourcing, including data center services, workplace services, networking services and managed security; business process outsourcing, including health claims,

financial processing, CRM and HR outsourcing; applications, including development, modernization and management; consulting and integration; and technology services. The combination will provide extensive experience in offering solutions to customers in the areas of government, healthcare, manufacturing, financial services, energy, transportation, communications, and consumer industries and retail.

Under the terms of the merger agreement, EDS stockholders will receive $25.00 for each share of EDS common stock that they hold at the closing of the merger. The acquisition is subject to customary closing conditions, including the receipt of domestic and foreign regulatory approvals and the approval of EDS's stockholders.

(emphasis added.)

25.     The Merger Agreement also provides that, upon termination under specified circumstances, the Company would be required to pay HP *a termination fee of $375 million*. The grossly excessive nature of the termination fee operates as a disincentive to other potential bidders or interested parties to explore a potential transaction with EDS.  Consequently, the termination fee will preclude shareholders from reaping the greatest value for their interest in the Company.

26.     On May 13, 2008, CNET News.com reported the following after the announcement of  the Proposed Acquisition:

> [T]he deal, which has been unanimously approved by the HP and EDS boards of directors, will close in the second half of the year. HP expects that the addition of EDS will more than double HP's services revenue of $16.6 billion in fiscal 2007. At the end of 2007, HP and EDS had a collective services revenue of more than $38 billion and 210,000 employees, doing business in more than 80 countries, HP said.
>
> HP said it will establish a new business group, called EDS--an HP company, which will be headquartered at EDS's existing executive offices in Plano, Texas.
>
> EDS will continue to be led by EDS Chairman, President and Chief Executive Officer Ronald A. Rittenmeyer, who will join HP's executive council and report to Mark Hurd, HP's chairman and chief executive officer, the company said. All of HP's existing technology services will remain under its TSG (Technology Services Group) wing reporting to its current director Ann Livermore, with the exception of outsourcing, which will now fall under Rittenmeyer's purview at EDS.

27.     The consideration reflected in the Proposed Acquisition, $25.00 per share in cash for each EDS share, however, falls short and does not adequately value the Company's substantial assets

or the significant merger synergies that HP stands to gain if the Proposed Acquisition is consummated. Thus, the $25 cash per share offered in the Proposed Acquisition is unfair and grossly inadequate because, *inter alia*, the intrinsic value of EDS's common stock is materially in excess of the amount offered for those securities in the Proposed Acquisition in light of the Company's prospects for substantial future growth and earnings which will increase the value of EDS and its assets.

### Defendants Have Irremediable Conflicts of Interest

28.     The Proposed Acquisition suffers from numerous and irremediable conflicts of interests.   In response to the Proposed Acquisition, the Company's Board formed a Special Committee to review and evaluate the proposal. The Board hired Citigroup, Inc. ("Citigroup") and Evercore Partners ("Evercore") as advisers.

29.     Citigroup, however, has a close working relationship with HP that compromises its independence as an adviser to EDS.   Specifically, on April 22, 2008, the Financial Times reported that Citigroup officials were looking to HP for advice on how the ailing bank can improve its fortunes, drawing on the IT firm's encounter with similar trouble in the past. The report noted that Citigroup's top officials have been talking to their counterparts at HP. Additionally, Robert L. Ryan, a member of the Board of Directors of HP since 2004, is also a director at Citigroup, Inc. Furthermore, Lucille Salhany, a member of the Board of Directors of HP served on the Board of Directors of American Media Operations, Inc. with Austin M. Beutner who is co-founder and President of Evercore and Neeraj Mital who is a Senior Managing Director and Co-Head of the private equity business of Evercore.

30.     These conflicts of interest ensure that Defendants' own interests are maximized as opposed to Plaintiff's interests and those of the Class.  The Individual Defendants have breached

their fiduciary duties to EDS's public shareholders by causing the Company to enter into the Merger Agreement that provides for the sale of EDS at an unfair price, and deprives EDS' public shareholders of maximum value to which they are entitled. The Individual Defendants have also breached their fiduciary duties by not taking adequate measures to ensure that the interests of EDS' public shareholders are properly protected from Defendants' own self interests.

**Defendants and Company Insiders Engaged in Self Dealing**

31.     Defendants and/or other Company insiders stand to obtain substantial personal benefits as a result of the Proposed Acquisition.  Specifically, Defendants Rittenmeyer and Heller stand to receive over $30 million and $14 million, respectively, in change of control benefits if the Proposed Acquisition is consummated.

32.     By reason of their positions with EDS, the Individual Defendants are in possession of non-public information concerning the financial condition and prospects of EDS, and especially the true value and expected increased future value of EDS and its assets, which they have not disclosed to the Company's public stockholders.  Moreover, despite their duty to maximize shareholder value, the Defendants have clear and material conflicts of interest and are acting to better their own interests at the expense of the Company's public shareholders.

33.     The proposed sale is wrongful, unfair and harmful to the Company's public stockholders, and represents an effort by Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of Class members.  Specifically, Defendants are attempting to deny Plaintiff and the Class their shareholder rights via the sale of EDS on terms that do not adequately value the Company and its assets; and Defendants have failed to disclose all material information concerning the true value of the Company.  Accordingly, the Proposed Acquisition will only benefit Defendants.

34.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

(a)     withdraw their consent to the sale of EDS and allow the shares to trade freely – without impediments;

(b)     act independently so that the interests of the Company's public stockholders will be protected;

(c)     adequately ensure that no conflicts of interest exist between Defendants' own interests and their fiduciary obligation to maximize stockholder value and, to the extent such conflicts exist, ensure that all conflicts be resolved in the best interests of the Company's public stockholders;

(d)     solicit competing bids to HP's offer to assure that the Company's shareholders are receiving the maximum value for their shares; and

(e)     fully and fairly disclose all material information to shareholders regarding the Proposed Acquisition and the true value of the Company.

35.     Furthermore, the Individual Defendants have also approved the Proposed Acquisition so that it transfers 100% of the Company's unique assets, revenues and profits to the HP, thus all of the Company's operations will now accrue to the benefit of HP.

**The Proposed Acquisition Price is Unfair**

36.     As a result of Defendants' conduct, the Company's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  In order to meet their fiduciary duties, the  Defendants are obligated to explore transactions that will maximize shareholder value, not structure a preferential deal for themselves that will allow them to reap a windfall.

37.     The consideration reflected in the Proposed Acquisition agreement does not reflect the true inherent value of the Company that was known only to the Individual Defendants, as directors and officers of EDS and HP, at the time the Proposed Acquisition was announced because,

among other things, it does not properly value the substantial synergies that HP stands to gain if the Proposed Transaction is consummated.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duties Against the Defendants

38.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

39.     The Individual Defendants have violated their fiduciary duties of care, loyalty, candor, good faith and independence owed to the public shareholders of EDS and have acted to put their personal interests ahead of the interests of the Company's shareholders.

40.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value inherent in and arising from EDS.

41.     The Individual Defendants have violated their fiduciary duties by entering into the Proposed Acquisition contract without regard to the effect of the proposed transaction on the Company's shareholders.

42.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of EDS because, among other reasons:

(a)     they failed to take steps to maximize the value of EDS to its public shareholders and they took steps to avoid competitive bidding, to cap the price of the Company's stock and to give the Individual Defendants an unfair advantage, by, among other things, failing to adequately solicit other potential acquirors or alternative transactions;

(b)     they failed to properly value EDS and its various assets and operations; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from their directors' own interrelationships or connection with the Proposed Acquisition.

43.     Because the Individual Defendants dominate and control the business and corporate affairs of EDS, and are in possession of private corporate and financial information concerning the Company's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of EDS which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they or HP will reap disproportionate benefits to the exclusion of maximizing stockholder value.

44.     By reason of the foregoing actions of Defendants, Plaintiff and the Class have been and will be irreparably harmed in that  the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

45.     Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Acquisition which will exclude the Class from its fair share of EDS' valuable assets and operations, and/or benefit Defendants in the unfair manner all alleged herein, all to the irreparable harm of the Class, as aforesaid.

46.     Defendants are engaging in self-dealing, are not acting in good faith toward Plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

47.     Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition terms, and will not supply to the Company's minority stockholders sufficient information to enable them to cast informed votes

regarding adoption of the Proposed Acquisition contract and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

48.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

### Aiding and Abetting

49.     Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

50.     In committing the wrongful acts alleged herein, Individual Defendants and HP have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants and HP further aided and abetted and/or assisted each other in breach of their respective duties as alleged herein.

51.     The purpose and effect of Individual Defendants and HP's consipiracy, common enterprise, and/or common course of conduct is, among other things, to permit violations of law and breaches of fiduciary duty.

52.     The Individual Defendants and HP accomplished their conspiracy, common enterprise and/or common course of conduct by entering into the Proposed Acquisition at an unfairly low price and through an unfair and woefully inadequate process.

53.     HP aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, HP acted with knowledge of the primary wrongdoing, substantially assisted the

accomplishment of that wrongdoing, and were aware of their overall contribution to and furtherance of the wrongdoing.

54.     The Court should enjoin HP from continuing to aid and abet the breach of fiduciary duty by the Individual Defendants and enjoin the consummation of the Proposed Acquisition.

55.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Proposed Acquisition agreement was entered into in breach of the fiduciary duties of the Individual Defendants, that EDS, along with HP, aided and abetted the Individual Defendants' breaches of fiduciary duties, and that the Proposed Acquisition agreement and is therefore unlawful and unenforceable;

C.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the highest possible value for shareholders;

D.     Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of the Company's shareholders until the process for the sale or auction of the Company is completed and the best possible consideration is obtained for EDS;

E.     Rescinding, to the extent already implemented, the Proposed Acquisition agreement or any of the terms thereof including but not limited to the termination fee and no solicitation clause;

F.    Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and experts' fees; and

G.    Granting such other and further equitable relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED:  May 30, 2008                    */s/* William B. Federman
                                        William B. Federman, TBA No. 00794935
                                        **FEDERMAN & SHERWOOD**
                                        10205 North Pennsylvania Ave.
                                        Oklahoma City, Oklahoma  73120
                                        Telephone:  (405) 235-1560
                                        Facsimile:   (405) 239-2112
                                          --and--
                                        2926 Maple Avenue
                                        Suite 200
                                        Dallas, Texas  75201
                                        Attorneys for Plaintiff Donald A. Moore